## Nall v. Wakenva Coal Company.

(Decided December 16, 1930.)

ROY HELM for appellant.

FAULKNER & FAULKNER and JOE E. JOHNSON, JR., for appellee.

P. T. WHEELER for W. E. Davis.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

While working for the Wakenva Coal Company on August 9, 1928, J. L. Nall was injured by falling slate, and died as the result of his injuries on September 23, 1928. Both he and the company had accepted the provisions of the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987. A few months after his death, Lela Nall filed her application for compensation. This was followed by an amended application filed a few months later. The demurrer of the coal company to the application as amended was sustained, and the application was dismissed. Thereupon she filed her petition for review in the Perry circuit court, which affirmed the ruling of the Workmen's Compensation Board. She appeals.

In addition to other facts not necessary to be detailed, the amended application contains the following allegations:

"The plaintiff Lela Nall says that her maiden name was Lela Wilson; that she went through a ceremony of marriage with J. L. Nall at Whitesburg, Kentucky, on June 29, 1917; says that the said marriage ceremony were performed by G. Bennett Adams, a minister of the Baptist Church; that the certificate of said minister who performed said marriage ceremony was in words and figures as follows:

" 'I, G. Bennett Adams, a Minister of the Baptist Church, or religious order of that name, do certify that on the 29th day of June, 1917, at Whitesburg, Kentucky, under authority of a license issued by R. B. Bentley, Clerk of County Court of Letcher County, State of Kentucky, dated the 29th day of June, 1917, I united John L. Nall, Husband and Lela Wilson His Wife, in the presence of S. P. Combs and Amanda Gibson.

" 'Given under my hand, this 29th day of June, 1917.

" ' (Signed) G. Bennett Adams
" '(Persons performing Ceremony, sign here)

" 'Minister Baptist Church.
" '(Title of Office)'

says that previous to that time she had been married to George Reece; says that she had not been divorced from the said George Reece; says that she and the said J. L. Nall were, on June 29, 1917, married in good faith, understanding and believing that the said George Reece was then dead; says that they continued to live together in good faith until September 23, 1928, at which time the said J. L. Nall died as a result of the aforesaid injury, that thereafter this plaintiff was informed that her former husband, George Reece, was still living; she says that for 12 months previous to August 9, 1928, and for 12 months previous to September 23, 1928, this plaintiff lived in the household of the said J. L. Nall; that she was living in said household at the time he was injured as aforesaid and at the time he died as a result of the said injury as aforesaid; says that on or about February 20, 1928, she sustained an injury to her left leg by having it broken; that as a result of said

injury she was unable to perform her household work and duties up until the death of her husband, J. L. Nall; says that during a period of 12 months previous to August 9, 1928, and for a period of 12 months previous to September 23, 1928, the said J. L. Nall supported her; says that during said period he was her sole support; that no one else during said period contributed anything to her maintenance and support; says that during said period the said J. L. Nall contributed to her support an average of $50.00 per month; says that during said period the said J. L. Nall had no one else dependent upon him for support and that he did not during said period contribute anything to the support of any one else; says that she does not know the exact amount of the earnings of the said J. L. Nall for a period of one year previous to the said injuries; says that all of this information is in the possession of the defendant; says that the said wages were sufficient to entitle her to the maximum compensation.''

It will be seen that compensation is sought, not on the ground that the applicant was the wife of J. L. Nall, the deceased employee, but on the ground that she was a good-faith member of his household, and dependent on him at the time of the injury.

The precise question was before the Supreme Court of California in the case of Temescal Rock Co. v. Industrial Accident Commission et al., 180 Cal. 637, 182 P. 447, 448, 13 A. L. R. 683. Section 14 of the Workmen's Compensation Act of that state (St. Cal., 1917, p. 844) reads, in part, as follows:

''(a) The following shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

''(1) A wife upon a husband with whom she was living at the time of his death, or for whose support such husband was legally liable at the time of his death.

''(2) (This clause specifies the children who are deemed to be dependent, and is not important to the present case.)

''(b) In all other cases, questions of entire or partial dependency and questions as to who constitute dependents and the extent of their dependency shall be determined in accordance with the fact, as

the fact may be at the time of the injury of the employee.

"(c) No person shall be considered a dependent of any deceased employee unless in good faith a member of the family or household of such employee, or unless such person bears to such employee the relation of husband or wife, child, posthumous child, adopted child or step-child, father or mother, father-in-law or mother-in-law, grandfather or grandmother, brother or sister, uncle or aunt, brother-in-law or sister-in-law, nephew or niece."

The facts were these: Dolores Rodriguez sought compensation on account of the accidental death of Silviano Lopez. She and Lopez were ignorant persons, unacquainted with the law or the legal requirements of marriage. On June 5, 1918, they agreed to intermarry, and, in pursuance of such agreement, procured from the county clerk a marriage license authorizing their marriage. They in good faith believed that the license was sufficient to constitute in itself a lawful marriage. Thereupon they assumed the relation of husband and wife and cohabited together in the same dwelling, holding themselves out as husband and wife. The husband provided for their support until the time of the accident. During all that time she believed herself to be the lawful wife of Lopez, and continued to be in good faith a member of his household and wholly dependent upon him for her support. After pointing out that the two clauses of subsection (c) were connected by the disjunctive "or," with the result that the person found to be dependent under subsection (b) was entitled to compensation if he came within either of the two classes specified in subsection (c), the court concluded its opinion as follows:

"The petitioners argue that to allow compensation to one whose only claim to dependency arises from an illegal cohabitation with the employee, ostensibly as his wife, would be a gross violation of morals and of the express policy of our law, and, furthermore, that one living in such forbidden and criminal relations with another cannot in law be deemed to be acting in good faith as a member of his household. We think there are satisfactory answers to this argument. At common law Dolores Rodriguez, under the facts found, would have been the lawful wife of Lopez. There was a contract of mar-

riage and assumption of the rights, duties and obligations of the relation, and an actual consummation thereof. Graham v. Bennet, 2 Cal. 506; Sharon v. Sharon, 75 Cal. 1, 16 P. 345. It was not until after the amendment of 1895 to section 55 of the Civil Code that a solemnization became essential to the validity of a marriage. Norman v. Norman, 121 Cal. 620, 42 L. R. A. 343, 66 Am. St. Rep. 74, 54 P. 143. There was nothing essentially or inherently immoral or vicious in the conduct of the parties, if we judge them according to their own understanding and belief. The criminal character of their cohabitation does not come from the fact that they were cohabiting together believing themselves to be husband and wife, although not so, but from the fact that the Legislature, by the statute of 1895, had required an additional ceremony to constitute a legal marriage. Of this statute they were ignorant, and the immorality of their conduct cannot be judged with reference to it except in a case where the validity of the marriage is the essential thing to be determined. It was competent for the Legislature, by a subsequent statute, to make that particular requirement to a valid marriage inapplicable in other cases, such, for instance, as the determination of the question of dependency necessary to authorize compensation to a person injured by the death of an employee. This it has done by the provisions of section 14, with respect to one who at the time of the injury was in good faith a member of the household of the employee. This statute completely takes away, for that purpose, the immorality of parties who in good faith were living together as Lopez and Dolores Rodriguez were living. It also declares a different public policy with reference to such cases and completely removes the objection that it is not sound policy to allow compensation in such a case.

''It is true that if the provision is loosely administered it may give rise to great abuses. Persons consciously living in illicit relations may endeavor to take advantage of the situation for their own gain. But for the proper administration of the law in this respect the state depends upon the Industrial Accident Commission. It will, of course, exercise the greatest care to require strict proof of entire good faith in such cases. There is nothing in the evidence

in the present case to indicate that there was any ground for a charge of bad faith in the conduct of the parties at and prior to the time of the accident.''

Cases from other states when properly analyzed in the light of the facts and the controlling statutes, do not announce a contrary doctrine. Subsection 4 of section 2394-10 of the Wisconsin Statutes 1913 reads:

"No person shall be considered a dependent unless a member of the family of the deceased employee, or one who bears to him the relation of husband or widow, or lineal descendant, or ancestor, or brother, or sister.''

The construction of the statute arose in the case of Armstrong v. Industrial Commission of Wisconsin et al., 161 Wis. 530, 154 N. W. 844. That statute, it will be observed, did not provide for compensation "to a member of the household'' of the deceased employee. The only question was whether the alleged wife was "a member of the family'' of the deceased employee. Although a marriage ceremony had been performed, and the applicant believed that she was lawfully married, it was held that, as the deceased employee had not been divorced from his former wife for one year, he was incompetent to contract marriage and the marriage was void. It was further held that the relation between the applicant and the deceased was an illicit one, and it would be neither good law nor good public policy to hold that such relation established a family relation. This ruling was followed in the subsequent case of Hall v. Industrial Commission, 165 Wis. 364, 162 N. W. 312, L. R. A. 1917D, 829.

In Maryland, the Compensation Act, after providing that the wife and certain others shall be presumed to be wholly dependent upon a deceased employee, reads: "In all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury, resulting in death of such employee, but no person shall be considered as dependent unless such person be a father, mother, grandfather, grandmother, stepchild or grandchild, or brother or sister of the deceased employee, including those otherwise specified in this section.'' Code Pub. Gen. Laws Md. 1912, art. 101, sec. 36).

The act contains some general provisions with reference to relief for the injured employees and their fami-

lies. After holding that there was nothing in the act justifying the conclusion that one was entitled to compensation simply because he was a member of the family of the employee, the court in the case of Scott v. Independent Ice Co., 135 Md. 343, 109 A. 117, went further and called attention to the fact that, in those states where the statute provided for compensation to a person who is a member of the family of the deceased employee, it was held that a woman living with a man as his wife at the time of his death was not entitled to compensation if not legally married to him. It will also be observed that the statute in that case did not provide for compensation to ''a member of the household'' of the deceased employee.

In the state of Washington the Compensation Act provides for compensation to the widow of the deceased employee and also to a dependent, and defines ''dependent'' in the following language: ''Dependent means any of the following named relatives of a workman whose death results from any injury and who leaves surviving no widow, widower, or child under the age of sixteen years, viz.: Invalid child over the age of sixteen years, daughter, between sixteen and eighteen years of age, father, mother, grandfather, grandmother, stepfather, stepmother, grandson, granddaughter, stepson, stepdaughter, brother, sister, half-sister, half-brother, niece, nephew, who, at the time of the accident, are dependent, in whole or in part, for their support upon the earnings of the workman.'' Section 6604-3, Rem. Code Wash. 1915.

In the case of Meton v. State Industrial Insurance Department, 104 Wash. 652, 177 P. 696, the question arose as to whether the applicant was either the widow or a dependent of the deceased employee. The court held that, as she had never been legally married to the deceased employee, she was not his widow, and furthermore that she was not a dependent, as she did not fall within the definition given by the statute. In that case also no provision was made for compensation to a person who was a member of the household of the deceased employee.

In Gritta's case, 236 Mass. 204, 127 N. E. 889, there was no appeal from the finding of the Industrial Accident Board that the applicant who had never been married to the deceased employee was not entitled to compensation,

and the only question before the court was whether their illegitimate children were entitled to compensation, and this question was decided in the affirmative.

In the case of Wilson v. Birmingham Electric Co., 219 Ala. 346, 122 So. 411, the applicants for compensation were the two alleged widows of the deceased employee. It was held that Ola Wilson was not entitled to compensation because, though living with him at the time as man and wife, both had spouses by former marriages which had never been dissolved by either death or divorce. It was also held that Ada Wilson was not entitled to compensation because without a dissolution of her marriage with the deceased employee she had taken another husband and it conclusively appeared that at the time of the death of the deceased employee she was living apart from him, and he had not for years contributed to her support. It does not appear that the statute provided for compensation to "a member of the household" of the deceased employee, and, of course, that phase of the case was not dealt with by the court.

In the case of Utah Fuel Co. v. Industrial Commission of Utah, 65 Utah, 100, 234 P. 697, it was merely held that the applicant, who was never married to the deceased employee, was not his widow or a dependent within the meaning of the Industrial Act (Comp. Laws Utah 1917, sec. 3061 et seq. as amended), and it does not appear that compensation was sought on any other ground.

In the case of Green v. Green (Tex. Civ. App.) 235 S. W. 980, 981, all that the court held was that, even though the first wife of an employee had deserted him without cause, so as not to be entitled to compensation for his death under the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. Tex. 1918, art. 5246-15), a woman who subsequently married the employee was not his legal wife and could not claim the compensation as such. Again it does not appear that compensation was sought on any other ground.

The case of Dahlquist v. Nevada Industrial Commission, 46 Nev. 107, 206 P. 197, 207 P. 1104, is not authority either way, as common-law marriages are recognized as valid in Nevada.

On the other hand, the case of Temescal Rock Co. v. Industrial Accident Commission et al., supra, finds support in Kinnard v. Tennessee Chemical Co., 157 Tenn. 206, 7 S. W. (2d) 807, where the court held that one who

married an employee and lived with him as wife for nearly thirteen years until his death was entitled to compensation under the Workmen's Compensation Act (Laws Tenn. 1919, c. 123), notwithstanding the fact that he had not obtained a divorce from a prior wife where claimant was supported by the deceased for thirteen years, and she believed herself to be the lawful wife of the deceased.

Let us now consider our Workmen's Compensation Act. It reads in part as follows:

"The following persons shall be presumed to be wholly dependent upon a deceased employee: (a) A wife upon a husband whom she had not voluntarily abandoned at the time of the accident; (b) a husband incapacitated from wage-earning, upon a wife whom he has not voluntarily abandoned at the time of the accident to the wife; (c) a child or children under the age of sixteen years, or over sixteen years if incapacitated from wage-earning, upon the parent with whom such child or children are living or by whom actually supported at the time of the accident. In all other cases the relation of dependency in whole, or in part shall be determined in accordance with the facts of each case existing at the time of the accident, but no person shall be considered a dependent in any degree unless he be living in the household of the employee at the time of the accident, or unless such person bears to the employee the relation of father, mother, husband or wife, father-in-law or mother-in-law, grandfather or grandmother, child or grandchild, or brother or sister of the whole or half blood." (Ky. Stats., sec. 4894.)

It will be observed that this statute provides that no person shall be considered a dependent in any degree unless he be living in the household at the time of the accident or unless such person bears to the employee certain relationships. Construing this language in the case of Jones v. Louisville Gas & Electric Co., 209 Ky. 642, 273 S. W. 494, 495, we said:

"We cannot read the word or as and. It was clearly intended to cover, not only the children of the injured employee, but any one living in his household who was actually dependent upon him."

Therefore the only question for determination is whether the applicant in the circumstances pleaded was "living in the household" of the deceased employee at the time of his death? The only difference between the California act and our act is that the language of the former is, "unless in good faith a member of the family or household of such employee," while the language of our act is, "unless he be living in the household of the employee." It is at once apparent that our act is broader and more inclusive than the California Act, in that the words "good faith" are omitted from our act. Notwithstanding this difference, however, we are not inclined to the view that a woman who lives with a man as his wife without any reason to believe that she is married to him is entitled to compensation, but are constrained to hold that a sound public policy forbids the allowance of compensation founded on a relationship known to be illicit. On the other hand, we find ourselves in accord with the reasoning of the California court, and therefore rule that, where a marriage ceremony between the applicant and the deceased employee was actually performed, and at the time the applicant believed in good faith that her former spouse was dead, and that the marriage was valid, and thereafter continued in good faith to live with him as his wife, and was so living with him at the time of the accident, she must be regarded as "living in the household" of the employee, and entitled to compensation by reason of his death. It follows that the demurrer to the amended application should not have been sustained by the Workmen's Compensation Board, and that the circuit court erred in affirming its action.

On the return of the case the circuit court will remand the case to the Workmen's Compensation Board, with directions to overrule the demurrer to the amended application, and give the parties an opportunity to join issue and present their evidence.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.